963 F.2d 376
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
MIDWESTERN MACHINERY COMPANY, a Minnesota corporation, Appellant,
v.
NATIONAL PRESTO INDUSTRIES, a Wisconsin corporation, Appellee.
 No. 91-2529MN.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: March 12, 1992.
Filed: May 28, 1992.
 
 Before John R. Gibson, Circuit Judge, Floyd R. Gibson, Senior Circuit Judge, and LOKEN, Circuit Judge.
 PER CURIAM.
 
 
 1
 Midwestern Machinery Company (hereinafter "Midwestern") appeals the district court's[1] grant of summary judgment in favor of National Presto Industries (hereinafter "National") on Midwestern's claims for breach of contract and unjust enrichment. Midwestern was formed by its current president, Peter Platzer, in 1947. Platzer is widely known and highly regarded for his ability to appraise, and locate buyers for, used industrial equipment. On numerous occasions over the past thirty years, Midwestern, through Platzer, performed these services for National. Prior to the dispute in question, Midwestern and National never reduced their business arrangements to writing, but National always compensated
 
 
 2
 Midwestern by paying a percentage of the equipment's sale price. If Midwestern stored the equipment on its premises pending the sale, it received 15% of the sale price; if National stored the equipment, Midwestern received 10% of the sale price. However, Platzer received commissions only for equipment he sold on behalf of National; Platzer received no compensation for appraising equipment that National sold on its own.
 
 
 3
 In 1983, National asked Midwestern to appraise equipment owned by World Aerospace Corporation (hereinafter "Aerospace"), a subsidiary of National. The appraisal was performed in conjunction with National's attempt to sell Aerospace to an unspecified buyer, but the parties could not reach an agreement. In mid-1984, Platzer contacted National's president, Joseph Berney (with whom Platzer regularly dealt), and informed him that Gene Phelps was interested in purchasing Aerospace. In that same conversation, Platzer told Berney he did not want "another Johnson Printing Company," to which Berney replied "[d]on't worry, we've always taken care of you."
 
 
 4
 The Johnson Printing Company (hereinafter "Johnson") transaction to which Platzer referred took place in 1974. Platzer appraised Johnson's plant and equipment and introduced a buyer to National. However, National did not compensate Platzer after Johnson was sold.
 
 
 5
 National and Phelps negotiated the sale of Aerospace; Platzer was not involved in these negotiations. Phelps purchased Aerospace's stock, but did not have sufficient financing to purchase the equipment. Prior to closing, Aerospace transferred its equipment to Century Leasing and Liquidating, Inc. (hereinafter "Century"), another of National's subsidiaries. Century leased some of the equipment back to Aerospace, and Phelps was given a five-year option to purchase the equipment. Century then employed Midwestern to sell equipment Phelps did not lease and equipment Phelps leased but chose not to purchase. Equipment in the latter category was sold pursuant to a written contract between Century and Midwestern, which embodied the same compensation formula the parties had used throughout their business relationship. Platzer received commissions totalling $84,000 as a result of these sales.
 
 
 6
 Platzer, believing he was due commissions on the equipment Phelps purchased pursuant to his five-year option, filed suit alleging breach of contract and unjust enrichment. The district court granted National's motion for summary judgment. In so doing, the court determined there could not be an express contract because there was no discussion of the fee to be paid Midwestern for its assistance in selling the business. Midwestern Machinery Co. v. National Presto Indus., No. Civ. 4-90-409, slip op. at 7 (D. Minn. May 17, 1991). The court concluded that, as a matter of law, there could be no implied contract based on the parties' prior dealings because their prior dealings did not include payment of compensation to Midwestern for appraising equipment or for acting like a business broker. Id. at 8. The court also concluded Midwestern was not entitled to recover for unjust enrichment because there was no evidence National appreciated any benefit from Platzer's efforts prior to Platzer's activities on behalf of Century; to the contrary, the only evidence submitted by Midwestern suggested Phelps was the primary beneficiary of Platzer's efforts.
 
 
 7
 We have reviewed the record de novo, paying particular attention to the deposition testimony of Phelps, Berney, and Platzer. We agree with the district court's conclusions that, as a matter of law, no contract existed between Midwestern and National and that National was not unjustly enriched by Midwestern's actions. An opinion from this court would not serve any precedential value, so we affirm on the basis of the district court's opinion, which thoroughly and comprehensively discusses the facts of this case and the law applicable to those facts. See 8th Circuit Rule 47B(4).
 
 
 
 [1]
 The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota